## North American Acc. Ins. Co. *v.* Henderson.

(Division B. Dec. 13, 1937.   Suggestion of Error Overruled Jan. 24, 1938.)

[177 So. 528.   No. 32907.]

Watkins & Eager, of Jackson, for appellant.

Leonard B. Melvin, of Laurel, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee was insured under a health and accident policy issued by appellant, and which was in full force on the day of the injury hereinafter mentioned. The principal provision of the policy, insuring against injury by accidental means, was and is as follows: "If the Insured, while this policy is in force, shall sustain personal bodily injury, which is effected directly and independently of all other causes through external, violent and accidental means and which injury causes at once total and continuous disability and prevents the Insured from engaging in any and every kind of business or labor pertaining to his occupation, the Company will pay," etc.

On August 10, 1936, the appellee was in the employ of an ice cream company, his duties being to load the ice cream containers upon a truck, to drive the truck to the various places of delivery, to there unload and to collect for the deliveries made. On that morning, appellee had in the usual way backed his truck up nearly against the loading platform, and, with a container in each hand, he stepped from the platform to the rear gate of the truck, when, in so doing, his foot slipped on the gate and his body was thrown upon the corner of the truck in such a violent manner as to cause an inguinal rupture, the injury being so serious that appellee has been continuously disabled from engaging in his said occupation or any other occupation.

Proof of loss or injury was duly made but the insurer denied liability beyond a small sum, and, on April 14, 1937, appellee instituted his action at law for the recovery of the monthly indemnity due up to that date. On the trial he recovered judgment and the company has appealed.

Three contentions are presented by appellant and are urged as reasons for the reversal of the judgment. The first is that "appellee's accident was not the result of accidental means." It is urged that not only must the injury itself be accidental, but that the means which brought about the injury must be accidental, there being a distinction between accidental injury and injury resulting from accidental means. Lavender v. Life Ins. Co., 171 Miss. 169, 183, 157 So. 101. Appellant says that, when appellee stepped from the platform to the rear gate of the truck, he did exactly what he intended to do, and in stepping from the platform to the top of the gate, which top was only about two inches wide and of steel construction, he knew or should have known that his foot was liable to slip on the gate; that the slipping of his foot was the natural and probable consequence of his said deliberate act; wherefore, the means of the injury was not accidental, but was the proximate consequence of appellee's own negligence, and that he is not entitled to recover.

If a man jump from a four-story window to the pavement below, deliberately intending to do so, this is no accident but is suicide, and is not covered by an accident policy. But if the same person had intended to look out from the window, and, in approaching it, tripped over some object on the floor and was thereby thrown out of the window, this would be an accident, although the party was negligent in not seeing the object over which he tripped. It is apparent, therefore, that the test to be applied is not that of negligence or contributory negligence, as technically known in the law of torts, so long

as simple negligence only is involved; but the real test is that which is understood in common speech, so that the word "accidental" has the meaning given in the standard dictionaries of our language, and that is, undesignated, unintended, unexpected, unpremeditated. And when an accident policy refers to "accidental means" it must be understood that, although the insured may be attempting to use the precise means which he intended to use, yet when and while in that use, and during the course of the attempted execution of the purpose thereof, some undesigned, unintended, unexpected, or unpremeditated deflection from, or interruption of, the intended use or purpose occurs, as by stumbling or tripping or slipping, this is an accident by accidental means, unless and except the deflection or interruption was obviously inevitable, or was infected with a negligence so gross as to be tantamount to intention.

We are of the opinion that the facts of the case now before us do not justify the application of either of the qualifications or exceptions stated at the close of the foregoing paragraph; and that the insurer is liable under the policy. The leading cases are cited in Lickleider v. Iowa, etc., Ass'n, 184 Iowa 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295, and Lewis v. Ocean, etc., Corporation, 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129.

The second point taken by appellant insurance company is that appellee cannot be said to be suffering from a total and continuous disability when submission to a minor operation would result in a complete cure. All the doctors who testified were in agreement that the operation for the cure of an inguinal hernia is a major operation and is attended by danger, but that in 90 to 95 per cent. of such cases a complete cure results, and that the danger of death is remote. We are relieved, however, of a discussion as to when and under what circumstances an insured is obliged to submit to an operation, because it is undisputed in this case that appellee has

been at all times, and still is, willing to take the risks and undergo the operation, but has been financially unable to do so, it being shown by the undisputed evidence that the cost of such an operation, including hospital fees and attendance, would be about $265, and that appellee is without any such means.

Appellant asserts in its brief that appellee's financial condition is an immaterial matter and should not be considered as an element in this case. Appellant cites no case in support of that assertion, and, if there were such a case, we could not follow it. The duty to submit, under proper circumstances, to an operation, is no more than a corollary of the familiar rule applicable to injuries generally, whether in tort or in contract, that the injured person shall use reasonable care and effort to prevent, or minimize, the injury. But the rule is one of reason, and, if the injured person be powerless to take the needed step, reasonableness has become exhausted and the applicability of the rule is at an end. Under this rule it has been held that "plaintiff's lack of funds to meet the situation presented may excuse efforts to lessen the injury." 17 C. J., pp. 771, 772, section 97. We agree with this statement as applicable to insurance accident cases.

The third point urged by appellant is that appellee has forfeited his right to recovery in this case because of appellee's failure to receive regular medical attention, and appellant points to the following provision in the policy: "Indemnity will not accrue thereunder in excess of the time insured is, by reason of the injury or sickness or disease, under the professional care of a legally qualified physician or surgeon other than insured."

The only case cited by appellant in support of its contention on this point is American Bankers' Ins. Co. v. White, 171 Miss. 677, 158 So. 346; but in that case the policy requirement was materially different. Moreover, that case was not one of permanent disability, and the

court called attention to the fact that provisions in accident and health policies for regular attendance of a qualified physician have no application to an established permanent disability, since it would be unreasonable to assume that in such a case regular medical attention was contemplated. In the case now before us, all the physicians who were consulted testified that there was nothing which medical attention could do for appellee except by a surgical operation, and, until that was done, the disability would continue unabated, the only other means of alleviation being a truss which appellee had tried but was unable to wear. Since there was nothing that a physician, by professional care, could do for the appellee, short of surgery, regular attendance would have been without use or purpose. When the reason for a contract provision disappears, the provision itself disappears so far as being a material element in the legal problems at hand.

Affirmed.